IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMY K. POHL,                              )
                                          )
          Plaintiff,                      )
                                          )
     vs.                                  )
                                          )
UNITED STATES ENVIRONMENTAL               )
  PROTECTION AGENCY, UNITED               )
  STATES DEPARTMENT OF HEALTH             )   Civil Action No. 09-1480
  AND HUMAN SERVICES, CENTER              )
  FOR DISEASE CONTROL AND                 )
  PREVENTION, NATIONAL                    )
  INSTITUTES OF HEALTH, and               )
  NATIONAL INSTITUTE OF                   )
  ENVIRONMENTAL HEALTH                    )
  SCIENCES,                               )
                                          )
          Defendants.                     )

## MEMORANDUM OPINION

Pending before the Court are cross motions by Plaintiff Amy K.
Pohl and the various government departments and agencies who are
Defendants in this matter.  For the reasons discussed below, both
motions are denied and the matter is referred, again, to early
neutral evaluation.

## I.   INTRODUCTION

On November 11, 2009, Plaintiff brought suit against the
United States Environmental Protection Agency ("EPA"), United
States Department of Health and Human Services ("DHHS"), the
Centers for Disease Control and Prevention ("CDC"), National
Institutes of Health ("NIH"), and the National Institute of
Environmental Health Sciences ("NIEHS"), seeking an order of Court

requiring Defendants to disclose certain scientific records and research data.  According to the Complaint, Ms. Pohl requested this information from Defendants under the Freedom of Information Act ("FOIA") in August 2007.  The data related to grants which the EPA and the DHHS, through its component agencies, the CDC, NIEHS and NIH, had awarded to Bruce Lanphear, a researcher at the Center for the Study of Prevalent Neurotoxicants in Children at the Children's Hospital Medical Center in Cincinnati, Ohio.  Based on his research, Dr. Lanphear had concluded that children exposed to lead particles in the air, even at very low levels, suffer a decrease in IQ levels.  (*See* Doc. No. 10 at 1.)  This research led, in turn, to a Final Rule by the EPA dated May 1, 2008, adopting a new ambient air quality standard which cut by 90% the amount of lead permitted in the air.

The EPA initially denied Ms. Pohl's FOIA request for the underlying data, data collection forms, and software programs related to the Lanphear study ("the Requested Data.")  On February 14, 2008, an EPA appeals officer determined that those items were, to the contrary, subject to disclosure.  Rather than turning over the data, however, the EPA forwarded Plaintiff's request to the Department of Health and Human Services in May 2008 "for processing."  In October 2008, the CDC advised Ms. Pohl that it was "negotiating the availability of the data and the cost of providing it" with Dr. Lanphear.  (Complaint, ¶ 20.)

On December 16, 2008, the CDC reversed itself and claimed that the Requested Data were exempt from disclosure, thereby overturning the EPA's appeal officer's decision that the data were to be produced. In a completely separate analysis, the NIH advised Plaintiff on December 18, 2008, that the NIEHS grants which had partially funded Dr. Lanphear's research were "not sufficiently related to the data or study at issue to be disclosable under applicable federal regulations." (Complaint, ¶ 23.)

Ms. Pohl timely appealed both decisions to the DHHS on January 9, 2009. Despite the requirement that such appeals be resolved within 20 days, DHHS had not acted on the appeal or responded to Ms. Pohl's written inquiries about the status thereof at the time Plaintiff filed suit in this Court nearly a year later.

Plaintiff's action is brought under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), and the Freedom of Information Act, 5 U.S.C. § 552. This Court has subject matter jurisdiction and jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**II.  PROCEDURAL HISTORY**

As is the normal practice in the U.S. District Court for the Western District of Pennsylvania, immediately after the case was assigned, the parties were directed to complete the preliminary report required by Fed. R. Civ. P. 26(f) and a stipulation

3

selecting a process for alternative dispute resolution ("ADR.")

The Rule 26(f) report was timely filed on December 15, 2009, but the parties did not file a separate ADR stipulation. Instead, the Rule 26(f) report noted that Plaintiff had suggested early neutral evaluation ("ENE") within a month "would be the most efficient form of ADR," while Defendants suggested "ADR would not be useful in this case," but if the Court required it, mediation in late January 2010 would be preferable. The parties further noted they were involved in settlement discussions and requested an extension of the time in which to complete ADR after those discussions were complete. (Doc. No. 7 at 2.)

An initial case management conference was held on December 17, 2009, at which time the parties discussed the possibility of early neutral evaluation by someone familiar with FOIA issues who could resolve legal issues such as the Government's obligation to compel Dr. Lanphear to provide the agencies with the Requested Data.[1] The parties were directed to advise the Court by January 25, 2010, of the name of an evaluator upon whom they agreed, the allocation of costs between the parties, the date on which the evaluation would take place, and the date by which the report of the outcome of the process would be filed. (See Doc. No. 18.)

Instead of complying with this Order of Court, Defendants

---

[1] At the status conference, Defendants disclosed, apparently for the first time, that they did not have the Requested Data in their possession.

filed a motion to transfer the case to non-binding court-sponsored arbitration, an alternative which had not been discussed at the conference.  Apparently believing no brief in support of the motion was necessary, Defendants simply argued in the motion itself that the "principles of sovereign immunity likely preclude the possibility of assessing the cost of Early Neutral Evaluation to the government." (Doc. No. 9 at 1.)  As an alternative, Defendants requested any other process which would not impose costs on them.

In her brief in opposition to the motion to transfer the case to arbitration, Ms. Pohl argued that by waiving its immunity to suit and participating in litigation, the Government can be required to pay the normal associated costs.  (Plaintiff's Opposition, Doc. No. 10, "Plf.'s Opp.," at 3, *citing* <u>United States v. R.J. Reynolds Tobacco Co.</u>, 416 F.Supp. 313, 316 (D. N.J. 1976).) However, rather than pursue this argument, Plaintiff suggested as an alternative that the matter be referred to a Magistrate Judge to identify the core legal issues for the Court's consideration.  Ms. Pohl argued this process would resolve Defendants' costs and sovereign immunity concerns while at the same time moving the case forward. (Plf.'s Opp. at 5.)  Plaintiff further suggested that if the case were not to be considered by an early neutral evaluator, the Court should lift the stay of discovery which Defendants proposed at the initial case management conference.  (Plf.'s Opp. at 3-4.)

While Defendants did not object to appointing a Magistrate Judge, they did object to everything else in Plaintiff's proposal. First, while the Government had "no objection to a magistrate acting as an ADR neutral in this case, it expects that the rules of confidentiality attendant to any ADR process would similarly attach to this proceeding." (Reply in Support of Defendants' Motion to Transfer Case to Non-Binding Arbitration, Doc. No. 11, "Defs.' Reply," at 2.) Second, Defendants opposed the request to lift the stay of discovery under any circumstances, arguing that one of the objectives in transferring the case to ADR was for the neutral to resolve discovery disputes.[2]

## III. ANALYSIS

As noted above, Defendants have proposed, with no analysis, that they are "likely" exempt from the costs of early neutral evaluation under principles of sovereign immunity. They rely on two cases for this position: United States v. Idaho, 508 U.S. 1 (1993), and Cunningham v. Federal Bureau of Investigation, 664 F.2d 383 (3d Cir. 1981).

Defendants cite United States v. Idaho for the well-established principle that "waivers of federal sovereign immunity must be unequivocally expressed in the statutory text." Id., 508

---

[2] Defendants have taken the position that any discovery in a FOIA/APA case, including the exchange of initial disclosures, is inappropriate. See Rule 26(f) report, ¶¶ 7-11; 15. This Memorandum Opinion does not address that issue.

U.S. at 6.  At the heart of the <u>Idaho</u> case was the question of whether the McCarran Amendment, 43 U.S.C. § 666, which allowed a State to join the United States as a defendant in certain water rights adjudications, waived the sovereign immunity of the United States from paying the filing fees required by the State of Idaho in those cases.  The McCarran Amendment further provided that "no judgment for costs shall be entered against the United States in any such suit."  <u>Id.</u>  In light of this provision, the Supreme Court held that the language of the Amendment did not waive the Government's immunity from payment of those fees, even if the United States were subject to Idaho state laws in other regards.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994); *see also* <u>Beneficial Consumer Discount Co. v. Poltonowicz</u>, 47 F.3d 91, 93-94 (3d Cir. 1995).  The Government has chosen to waive such immunity under both the FOIA and the APA. Specifically, "[t]he APA waives sovereign immunity where (1) plaintiff's claims are not for money damages, (2) an adequate remedy is not available elsewhere, and (3) the claims do not seek relief that is expressly or impliedly forbidden by another statute." <u>San Diego Navy Broadway Complex Coalition v. United States Dep't of the Navy</u>, CA No. 07-909, 2008 U.S. Dist. LEXIS 1519, * 10 (S.D. Cal. Jan. 8, 2008), *citing* <u>Tucson Airport Auth. v. General Dynamics Corp.</u>, 136 F.3d 641, 645 (9th Cir. 1988); *see also*

<u>Cohen v. United States</u>, 578 F.3d 1, 6 (D.C. Cir. 2009); and 5 U.S.C. § 702.[3]   Similarly, "the United States has waived its sovereign immunity under FOIA as to injunctive relief, attorney fees and costs," but not as to monetary damages, including punitive damages. <u>Scherer v. United States</u>, 241 F. Supp.2d 1270, 1278, n.15 (D. Kan. 2003); *see also* <u>Kosa v. Dep't of Homeland Sec.</u>, CA No. 09-196, 2009 U.S. Dist. LEXIS 78347, *6-*7 (N.D. Tex. June 23, 2009); 5 U.S.C. § 552(a)(4)(B) and (E)(i).[4]   Here, Plaintiff seeks only injunctive relief, i.e., production of the Requested Data, should she prevail.   The Government does not claim, nor could it rationally argue, that it is generally immune from suit under the APA or FOIA.   And the explicit waiver of sovereign immunity as to "litigation costs" under the FOIA is diametrically opposed to the language of the legislation at question in <u>Idaho</u>, which just as explicitly states that "no judgment for costs" was permitted.

---

[3]   This section provides, in pertinent part, "action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.   The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States."   5 U.S.C. § 702.

[4]   In pertinent part, this section provides: "[T]he district court. . .has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."   5 U.S.C. § 552(a)(4)(B). "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."   5 U.S.C. § 552(a)(4)(E)(i).

We also find Defendants' reliance on Cunningham for the principle that the government cannot be assessed the costs associated with early neutral evaluation to rest on an over-reading of that opinion.    In Cunningham, the *pro se* plaintiff had successfully sued the FBI under FOIA. The district court, finding that he had "substantially prevailed" even though he did not receive all the documents he sought, awarded Cunningham out-of-pocket disbursements and an additional $750 "in lieu of attorney's fees." Cunningham, 664 F.2d at 383.  The Government appealed the award of attorney's fees, arguing that a non-lawyer *pro se* litigant could not recover such fees in a FOIA case.  Id. at 384.  As the beginning point of its analysis, the court noted that under the FOIA, Congress has specifically provided that the United States may be assessed "reasonable attorney fees and other litigation costs reasonably incurred."  Id., *citing* 5 U.S.C. § 552(a)(4)(E).   The court went on to hold that an award of "attorney's fees" did not apply in a situation where "there is neither an attorney nor a fee to be brought."  Id. at 385.   The court did not question the decision to award Cunningham his costs associated with bringing the litigation.  Id. at 387, n.4, and 388.

We read the language from Cunningham cited by Defendants, i.e., that the "costs and expenses of litigation are not recoverable from the United States" as pertaining to a successful litigant's right to recoup from the Government his own costs and

attorneys fees; it says nothing about protecting the Government from incurring costs and expenses of litigation on its own behalf. If the Government were excused from incurring such costs during the course of litigation, the right of private individuals to bring suit under FOIA would be a complete sham because any defendant, the Government included, must necessarily incur costs defending itself.

Pursuant to Local Rule 16.2 of the Western District of Pennsylvania, alternative dispute resolution is now mandatory for all civil cases.  There are only two exceptions - cases which involve Social Security benefits appeals and those which involve a prisoner-litigant. W.D. Pa. L.R. 16.2(B).  No exceptions have been made for cases in which the United States Government is either the plaintiff or defendant.  Where the parties cannot agree on a specific process, "the Judge will make an appropriate determination and/or selection for the parties." Id.  The Government is clearly contemplated as a participant in all forms of ADR because where good faith participation is discussed, the rules pertaining to arbitration, ENE, and mediation all provide:

> Government Entity.  A Unit or agency of government satisfies this attendance requirement if represented by a person who has, to the greatest extent feasible, full settlement authority, and is knowledgeable about the facts of the case, the governmental unit's position, and the procedures and policies under which the governmental unit decides whether to accept proposed settlements.  If the action is brought by the government on behalf of one or more individuals, at least one such individual also must attend.

> If the Government were generally exempt under principles of

10

sovereign immunity from participating in forms of ADR which required payment by the parties to the neutral, it would be illogical for the Court to set out attendance requirements for Government participation in such processes.

This Court has participated in the ADR program for more than two years and has routinely required litigants to identify their choice of ADR and complete the process early in the litigation, except where circumstances of the case require some degree of discovery related to specific issues. Where a federal agency has been the plaintiff, the parties have engaged in ADR, including allocation of the costs between the parties without objection by the Government. *See*, e.g., <u>United States of America v. Lim</u>, CA No. 09-1137 (IRS tax liability, private ADR with 50%-50% division of costs); and <u>United States of America v. Gruber *et al.*</u>, CA No. 08-1178 (IRS tax liability, ENE, 50%-50% division.) Other cases before this Court in which the Government was the defendant have been referred to ADR, but have settled or been otherwise resolved before the specific process was identified and carried out.

However, cases have been reported which allude to the Government's participation in ADR as the defendant, although relevant details about the process and payment are not provided. *See*, e.g., <u>E. Shawnee Tribe v. United States</u>, 582 F.3d 1306, 1310, n.2 (Fed. Cir. 2009) (noting that related litigation, also against the United States, had been stayed "in order to allow the parties

11

to attempt settlement or alternative dispute resolution"); <u>In re: United States Dep't of Homeland Security</u>, No. 06-20330, 2006 U.S. App. LEXIS 16976, *9, n.3 (5th Cir. May 8, 2006) (Government had drafted the ADR agreement which the court affirmed as enforceable); <u>Kwitek v. United States Postal Serv.</u>, CA No. 07-826, 2010 U.S. Dist. LEXIS 14197, *2, n.2 (W.D. N.Y. Feb. 18, 2010) (parties agreed to mediation under the district court's ADR plan); <u>Sloan v. United States</u>, 603 F. Supp.2d 798, 814 (E.D. Pa. 2009) (court directed parties in a Jones Act case to identify the form of ADR agreed upon and when it would be conducted); <u>Jackson v. United States</u>, CA No. 03-160, 2009 U.S. Dist. LEXIS 75927, *1 (E.D. Mo. Aug. 26, 2009) (parties had settled case through ADR); and <u>Snyder v. DOD</u>, CA No. 03-4992, 2007 U.S. Dist. LEXIS 27420, *10 (N.D. Cal. Mar. 27, 2007) (although the court had "strongly encouraged the parties" to undergo ADR "such as arbitration before a technically sophisticated arbitrator,. . .the parties, alas" had rejected that proposal.)  In fact, our independent research failed to disclose a single reported case in which the court had excused the Government from participating in some form of ADR on any grounds, including the argument made here that sovereign immunity precludes the Government from paying the associated costs.[5]

---

[5]   As a corollary, we have found other cases in which the Government has been required to pay its share of court-ordered activities.  For instance, cases requiring the Government to pay a portion of the fees charged by a special master include <u>National Org. for the Reform of Marijuana Laws v. Mullen</u>, 828 F.2d 536, 545-546 (9th Cir. 1987); <u>Nat'l Ass'n of Radiation Survivors v. Turnage</u>, CA No. 83-

In sum, the Court is not persuaded that principles of sovereign immunity preclude us from requiring the Government to participate in a form of ADR which would require it to expend funds on its own behalf.   Defendants are not being required to pay the entire cost of early neutral evaluation but rather to share the costs with Plaintiff who appears willing to do so.   Defendants have not raised any other objections to early neutral evaluation as compared to mediation or arbitration.   Therefore, with some modification of the dates set forth in the December 18, 2009 Order, we deny both parties' motions.   An appropriate order follows.

*William L. Standish*
William L. Standish
United States District Judge

cc: Counsel of Record

---

1861, 1987 U.S. Dist. LEXIS 3468, * 58-*60 (N.D. Cal. 1987); United States v. Cline, 388 F.2d 294, 296 (4th Cir. 1968); Young v. Pierce, 640 F.Supp. 1476, 1491-1495 (E.D. Tex. 1986), vacated on other grounds, 822 F.2d 1368 (5th Cir. 1987); and United States v. American Tel. & Tel. Co., 461 F.Supp. 1314, 1348, n.112 (D. D.C. 1978). Similarly, courts have ordered the Government to pay part of the cost of a court-appointed expert witness. See, e.g., United States Marshals Service v. Means, 741 F.2d 1053, 1057-1060 (8th Cir. 1984) (the combination of Fed. R. Evid. 614(a) and 706(b), 28 U.S.C. §§ 1920 and 2412, and Fed. R. Civ. P. 54(d) gave district court discretionary power to call defendant's expert witnesses as its own witnesses and to order the government to advance the witnesses' fees and expenses, which would later be taxed as costs to the prevailing party); and United States v. Articles. . .Provimi, 425 F.Supp. 228, 231 (D. N.J. 1977).