IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AMY K. POHL,                         )
                                     )
            Plaintiff,               )
                                     )
    vs.                              )
                                     )
UNITED STATES ENVIRONMENTAL          )
    PROTECTION AGENCY, UNITED        )
    STATES DEPARTMENT OF HEALTH      )   Civil Action No. 09-1480
    AND HUMAN SERVICES, CENTERS      )
    FOR DISEASE CONTROL AND          )
    PREVENTION, NATIONAL             )
    INSTITUTES OF HEALTH, NATIONAL   )
    INSTITUTE OF ENVIRONMENTAL       )
    HEALTH SCIENCES, DR. BRUCE       )
    LANPHEAR, and CHILDREN'S         )
    HOSPITAL MEDICAL CENTER,         )
                                     )
            Defendants.              )

## MEMORANDUM ORDER

Pending before the Court is a motion for a protective order
and to stay discovery, filed by Defendants United States
Environmental Protection Agency ("EPA"), United States Department
of Health and Human Services ("HHS"), the Centers for Disease
Control and Prevention ("CDC"), the National Institutes of Health,
and the National Institute of Environmental Health Sciences
(collectively, "the Government Defendants.")    (Doc. No. 32.)
Plaintiff Amy Pohl objects to both aspects of the Motion and seeks
the opportunity to proceed with extensive requests for production
of documents.[1]  Under the conditions set forth below, the Government

_____

1 Plaintiff also argues that she is entitled to discovery on her

Defendants' motion is granted.

## I.  **BACKGROUND**[2]

Both the Government Defendants and Ms. Pohl argue that this is not the typical case brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), or the Administrative Procedures Act, 5 U.S.C. §§ 702 and 706 ("APA.") The Court agrees. The primary and crucial difference is that unlike the typical APA or FOIA case which focuses solely on the actions of one or more government agencies, this case also involves non-governmental entities.

In the Amended Complaint ("Am. Compl.," Doc. No. 28), Plaintiff alleges that in 2008, the EPA promulgated new ambient air quality standards for lead, based in large part on a study conducted by Defendant Dr. Bruce Lanphear and others ("the Lanphear Study.")[3] Dr. Lanphear's research concentrated on the correlation between cognitive defects in younger children and exposure to lead in the environment; it was funded, at least in part, by grants from the National Institute of Environmental Health Sciences, the CDC,

"mandamus claims." (Plaintiff's Opposition to the Government Defendants' Motion for a Protective Order, Doc. No. 38, at 11-13.) However, to the extent that any portion of the Amended Complaint could be considered a mandamus "claim," such claims were dismissed in the Memorandum Opinion and Order entered on October 29, 2010.

2    Additional factual details are provided in the Memorandum Opinions filed at Doc. Nos. 12, 25, and 48.

3    *See* Amended Complaint, Exhibit 1, "Low-Level Environmental Lead Exposure and Children's Intellectual Function: An International Pooled Analysis," published in Environmental Health Perspectives, Vol. 113, No. 7, July 2005.

the EPA, and the HHS. During much of the time in which Dr. Lanphear conducted his research and compiled results from similar studies by other scientists, he was affiliated with the Children's Hospital Medical Center in Cincinnati, Ohio ("Children's Hospital.") Dr. Lanphear and Children's Hospital (collectively, "the Research Defendants") also received federal grants beginning in 2002 to fund creation of a center to study the effects of prevalent neurotoxicants in children.

In August 2007, Ms. Pohl wrote to the EPA requesting "a copy of all data related to" the Lanphear Study, the data collection forms and software programs necessary to access and analyze those data, and the data dictionaries for the raw data. (Am. Compl., Exh. 2.) Her FOIA request was initially denied for two reasons: (1) the EPA did not have the underlying data and (2) at the time the request was made, the EPA's draft report citing the Lanphear Study did not have the force and effect of law. Ms. Pohl appealed this decision and in February 2008, the EPA conceded that while it still did not have the requested data, since the agency was then in the process of establishing the proposed standards for the lead national ambient air quality standards (which would also rely on the Lanphear Study), the EPA would process her request in accordance with 40 C.F.R § 30.36.[4] The EPA stated it would contact

---

4 As discussed in more detail in the Memorandum Opinion at Doc. No. 48, this regulation provides that "in response to a [FOIA] request for research data relating to published research findings produced under an

3

Dr. Lanphear, request an estimate of the fees for responding to Ms. Pohl's request, and provide her with that estimate before proceeding further. (Am. Compl., Exh. 3.)

In June 2008, for reasons that are currently unclear, Ms. Pohl's request was transferred from the EPA to the Centers for Disease Control. The CDC wrote to Plaintiff on December 16, 2008, stating that program staff had contacted the grantee, presumably Dr. Lanphear, regarding the availability of the data. Dr. Lanphear refused to provide them, "based on a private agreement among the co-authors [of the Lanphear Study] reached at the outset of the collaboration." (Am. Compl., Exh. 4.) The claim for exclusion was allegedly because the data comprised "trade secrets, commercial information, materials necessary to be held confidential by a researcher until they are published, or similar information which is protected by law." (Id., citing 45 C.F.R. § 74.36.)

The initial complaint in this matter did not allege any violations of law by either Dr. Lanphear or Children's Hospital. However, in the Amended Complaint, Ms. Pohl contends that the

---

award that were used by the Federal Government in developing an agency action that has the force and effect of law, the EPA shall request, and the recipient shall provide, within a reasonable time, the research data so that they can be made available to the public through the procedures established under the FOIA. If the EPA obtains the research data solely in response to a FOIA request, the agency may charge the requester a reasonable fee equaling the full incremental cost of obtaining the research data. This fee should reflect costs incurred by the agency, the recipient, and applicable subrecipients. This fee is in addition to any fees the agency may assess under the FOIA (5 U.S.C. 552(a)(4)(A))." 40 C.F.R. §30.36(d)(1).

Research Defendants entered into a series of contracts between themselves and various Government Defendants which incorporated provisions requiring them to provide research data according to the regulations set out, for example, in 40 C.F.R. §30.36(d)(1). By refusing to provide the data, the Research Defendants breached those contracts. As member of the public, Plaintiff is a direct and intended beneficiary of the research grants, she is entitled to the information, and therefore has standing to compel the Research Defendants to comply with the contract terms. (Am. Compl., Count VI, ¶¶ 139-147.) In Count VII, Plaintiff alleges that the Research Defendants have unlawfully withheld the requested data and thereby violated Circular A-110 and the Shelby Amendment from which it is derived.[5]

## II. DISCUSSION

In a typical case brought under FOIA, the plaintiff seeks an order of court declaring that the defendant failed to conduct an adequate search for the requested data, erroneously applied one of the exceptions to production, erroneously invoked one of the nine enumerated exemptions set out in the statute, or otherwise acted in bad faith in responding to the request. See, e.g., Cozen O'Connor v. United States Dep't of Treasury, 570 F. Supp.2d 749 (E.D. Pa. 2008), discussing the criteria for an adequate search and several

---

5    See Memorandum Opinion at Doc. No. 48, footnote 3, for further discussion of the "Shelby Amendment" to the Omnibus Consolidated & Emergency Supplemental Appropriations Act of 1999, Pub. L. 105-277, 112

5

of the nine exemptions to production of agency records. In such cases, the court conducts a *de novo* review of the agency's decision to withhold records from the public and determines as a matter of law if the agency has complied with the statute. 5 U.S.C. § 552(a)(4)(B). To carry its burden of justifying the denial, the agency must submit affidavits to explain the process it used in attempting to comply with the request and, if applicable, the reasons a particular exemption or exception was applied. Arizechi v. IRS, CA No. 06-5292, 2008 U.S. Dist. LEXIS 13753, *8 (D. N.J. Feb. 25, 2008), *citing* Manna v. U.S. Dep't of Justice, 51 F.3d 1158, 1163 (3d Cir. 1995).

The affidavits and other documentary evidence are provided when the agency moves for summary judgment. "An agency is entitled to summary judgment only when the agency's affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption. . ., and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Pipko v. CIA, 312 F. Supp.2d 669, 674 (D.N.J. 2003) (internal quotation omitted.) If the affidavits are "relatively detailed," nonconclusory, and provide sufficient description of the documents withheld, the court may rely on them in determining if the agency has acted in good faith when access

---

Stat. 2681-495, October 21, 1998.

was denied. Arizechi, id. at *9-*11.

In general, FOIA cases do not anticipate discovery prior to the ruling on the motion for summary judgment. Broaddrick v. Exec. Office of the President, 139 F. Supp.2d 55, 63 (D. D.C. 2001) ("discovery is not typically a part of FOIA. . .cases") (internal citation omitted); Heily v. DOC, No. 03-1309, 2003 U.S. App. LEXIS 13503, *5-*6 (4th Cir. June 12, 2003) ("discovery may be greatly restricted in FOIA cases" and "is generally is limited to the scope of the agency's search and its indexing and classification procedures.") Even after the agency has moved for summary judgment, discovery in FOIA cases is rare. Schrecker v. United States DOJ, 217 F. Supp.2d 29, 35 (D. D.C. 2002) (Discovery in FOIA cases "should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains.")

However, this is by no means a firm prohibition. See, e.g., Pa. Dep't of Pub. Welfare v. United States, CA No. 99-175, 2001 U.S. Dist. LEXIS 3492, * 2 (W.D. Pa. Feb. 7, 2001), referring to more than eight months of discovery prior to the parties filing for summary judgment; Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1240-1242 (11th Cir. 2008) (magistrate judge permitted plaintiffs to take depositions of EPA employees prior to agency's motion for summary judgment and additional discovery prior to resolution of the motion.) The decision to allow discovery and

the scope thereof is at the discretion of the district court. Baker & Hostetler LLP v. United States DOC, 473 F.3d 312, 318 (D.C. Cir. 2006), *citing* SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (district court has "broad discretion to manage the scope of discovery" in FOIA cases); Broaddrick, id.

Discovery in cases brought under the APA is similarly rare and often restricted in scope or duration; however, as in FOIA cases, it is not absolutely prohibited. *See* Little Co. of Mary Hosp. v. Sebelius, 587 F.3d 849, 856 (7th Cir. 2009) ("As a general rule, under the APA, review of an agency's decision is confined to the administrative record to determine whether, based on the information presented to the administrative agency, the agency's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"); Sharkey v. Quarantillo, 541 F.3d 75, 93, n.15 (2d Cir. 2008) (Discovery rights are "significantly limited" in APA cases and the "agency must turn over the whole administrative record as it existed at the time of the challenged agency action, but normally no more.") The United States Court of Appeals for the Third Circuit has considered in detail those circumstances in which the administrative record may be supplemented. *See* NVE, Inc. v. HHS, 436 F.3d 182 (3d Cir. 2006). There, the Court noted that only one provision of the APA, 5 U.S.C. § 706(2)(F),[6] permits a reviewing court to look beyond the

---

6 The APA provides in relevant part: "To the extent necessary to

8

administrative record and then only in two situations: (1) "when the action is adjudicatory in nature and the agency fact finding procedures are inadequate," and (2) "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." Id. at 189, *quoting* Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971). Thus, in this Circuit, the administrative record in APA cases may be supplemented where there was evidence of agency bias (NVE, Inc., id. at 195) or "where the bare administrative record [does] not disclose the factors considered by an agency or the agency's construction of the evidence in its record." Horizons International, Inc. v. Baldrige, 811 F.2d 154, 162 (3d Cir. 1987), *citing* Overton Park, id. at 420; *see also* Camp v. Pitts, 411 U.S. 138, 141-142 (1973) ("*de novo* review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions.")

The fact that this case involves defendants other than government agencies may well require Plaintiff to engage in some discovery prior to consideration of the Government Defendants'

---

decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall. . .hold unlawful and set aside agency action, findings, and conclusions found to be. . .unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." 5 U.S.C. § 706(2)(F).

expected motion for summary judgment, in particular on the subject of the interactions between the Government Defendants and the Research Defendants. For example, the administrative record will not, most likely, reflect actions between the Research Defendants themselves or between Dr. Lanphear and his collaborators. It may therefore be necessary to supplement the administrative record with evidence from the Research Defendants – by way of example only, a deposition by Dr. Lanphear to explain the agreement among the collaborators on the Lanphear Study that the research data would not be released or to explain the basis for the exemption on which the CDC relied in refusing to produce the data.

We will therefore grant the Government Defendants' motion for a protective order and stay discovery pending a conference among counsel for all parties herein, at which time we will consider whether the parties should proceed with limited and well-focused discovery, particularly with regard to the claims against the Research Defendants, prior to the Government Defendants filing their motion for summary judgment.

November  $2$ , 2010

William L. Standish
United States District Judge

10